# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **FRED SEIFERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 06 C 2936** |
| **v.** | ) | |
| | ) | **Wayne R. Andersen** |
| **DOMINICK'S FINER FOODS,** | ) | **District Judge** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fred Seifert ("Seifert") filed this action against defendant Dominick's Finer

Foods ("Dominick's") alleging illegal discrimination because of Seifert's age under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, and illegal discrimination

because of his sex and religion under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e *et seq*. This matter is before the court on Dominick's motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following

reasons, the motion is granted.

## BACKGROUND

Dominick's is a supermarket chain with in-store pharmacies in most of its Chicago

metropolitan locations. Seifert, a Jewish male, born on June 25, 1932, began working for

Dominick's as a full-time registered pharmacist on February 27, 1995. Approximately five years

after he was hired, Seifert voluntarily moved into a part-time, floater pharmacist position. As a

floater pharmacist, Seifert worked at various Dominick's pharmacies in the Chicagoland area for

approximately 34 hours each week. Each of Seifert's shifts was generally staffed with one or

two registered pharmacists, including Seifert, and occasionally a pharmacy technician, who assisted registered pharmacists during those shifts.

Dominick's has in place a sexual harassment policy which prohibits conduct of a sexual nature, including "behavior that is not welcome, that is personally offensive, that fails to respect the rights of others, that lowers morale and, therefore, interferes with work effectiveness." The policy further provides that "sexual harassment may be overt or subtle and may take different forms" including "sexual innuendoes, suggestive comments, jokes of a sexual nature" and "unwanted physical contact, including touching, pinching, [and] brushing of the body." The policy provides that violations will result in discipline, up to and including suspension and termination. This policy was in place at all times relevant to this litigation.

On March 19, 2003, Seifert worked in the pharmacy at Dominick's Fox River Grove, Illinois store with two or three pharmacy technicians, one of whom was Tonya Pieri ("Pieri"). During the shift, Seifert told the pharmacy technicians a joke involving Lorena Bobbitt, who Seifert knew was notorious for amputating her husband's penis. Pieri complained to the pharmacy manager about Seifert's conduct and the pharmacy manager reported the incident to Ed Cohen ("Cohen"), Director of Pharmacy and Seifert's direct supervisor. Specifically, Pieri complained that Seifert told her a dirty joke, looked at her inappropriately, and told her about a name that means "open hole." After receiving Pieri's complaint, Cohen asked Dominick's Human Resources Department to investigate Pieri's claims. Human Resources Development Specialist Matthew Ellin ("Ellin"), a Jewish male born on December 17, 1969, was assigned to the investigation.

On March 26, 2003, Ellin spoke with Pieri about Pieri's complaint. On March 31, 2003, Ellin spoke with Seifert and the manager of the Dominick's Lake Bluff, Illinois store, where

Seifert was working that day, about Pieri's complaint. During that conversation, Ellin informed

Seifert that Pieri had accused Seifert of telling an inappropriate joke about a man's penis. Seifert

denied telling the joke in the way that Pieri related it and agreed to not tell jokes in the future.

Ellin gave Seifert a copy of Dominick's sexual harassment policy and Seifert signed a written

warning.

On May 16, 2003, Seifert worked at Dominick's McHenry, Illinois store with two female

pharmacy technicians. During the shift, Seifert told his two female co-workers that they should

not watch late night shows, such as Jay Leno, if they did not want to hear jokes about

masturbation. Following the shift, Tony Mensik ("Mensik"), Pharmacy Manager at the

McHenry store, called Cohen to report that the two pharmacy technicians had complained to

Mensik about Seifert's behavior. Ellin was asked to investigate the new complaints against

Seifert and, on May 20, 2003, Ellin interviewed the two pharmacy technicians, who each gave

Ellin a written statement in which each alleged that Seifert told jokes about masturbation and

brushed up against each of them in an unwelcome manner.

On May 22, 2003, Ellin and Cohen met with Seifert at Dominick's Buffalo Grove,

Illinois store. During that meeting, Ellin informed Seifert that two female pharmacy technicians

from the McHenry store complained that Seifert told them an inappropriate joke on May 16,

2003. Seifert did not deny referencing masturbation during that shift, but he denied telling any

jokes and told Ellin that he only warned the women about watching late night television. Cohen

informed Seifert that Seifert was suspended pending Dominick's investigation of the new

complaints. Following the meeting, Ellin and Cohen discussed Seifert's behavior with Dwayne

Howard, Dominick's Director of Human Resources. Together, they concluded that Seifert had

again violated Dominick's sexual harassment policy and should be fired. On July 7, 2003,

Cohen sent Seifert a letter informing Seifert that he was fired for violating Dominick's policies and procedures.

Seifert filed his complaint in this action on May 26, 2006 alleging that his firing constituted illegal discrimination because of his age under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, and illegal discrimination because of his sex and religion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Dominick's now moves for summary judgment on all counts.

## DISCUSSION

*A.    Legal Standards*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the nonmoving party must present definite, competent evidence to rebut the summary judgment motion. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). The court considers the evidence in a light most favorable to the nonmoving party and draws all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

*B.* *Discrimination Under the Age Discrimination in Employment Act and Title VII*

Seifert alleges that his firing constituted illegal discrimination because of his age under the Age Discrimination in Employment Act and illegal discrimination because of his sex and religion under Title VII.  In order to survive summary judgment on a claim of discrimination under Title VII or the Age Discrimination Act, a plaintiff can proceed under either the direct or indirect method of proof.  *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007); *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997).

1.      The Direct Method of Proof

We will first analyze Seifert's discrimination claims under the direct method of proof.  "While the typical direct method situation is an admission of discriminatory animus by the employer . . . 'a plaintiff can also prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'"  *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006) (citing *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).  Here, no one at Dominick's admitted that Seifert was fired because his age, sex, or religion.  Thus, Seifert must attempt to prove discrimination under the direct method through circumstantial evidence.

The Seventh Circuit has observed that there are three means by which a plaintiff can defeat summary judgment using circumstantial evidence under the direct method.  *See Phelan*, 463 F.3d at 781.  The first is through the demonstration of "suspicious timing, [oral or written] ambiguous statements . . . behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn."  *Id.*  The second is through evidence that a similarly situated employee

received more favorable treatment, and the third is through "evidence that the plaintiff was

qualified for the job in question but passed over in favor of (or replaced by) a person not having

the forbidden characteristic and that the employer's stated reason for the difference in treatment

is unworthy of belief." *Id.*

Here, Seifert has set forth no evidence of sex or age discrimination under the direct

method, but he asserts that he has provided sufficient circumstantial evidence so that a

reasonable jury could conclude that he was fired because of his religion. Specifically, Seifert

asserts that during a telephone conversation with Cohen the evening after Seifert was suspended,

Seifert told Cohen that, prior to the complaints about Seifert's comment about masturbation,

Seifert had been involved in an argument about the New Testament with the two female

pharmacy technicians that later complained about the masturbation comment. Seifert further

alleges that two days after the argument one of the women asked Seifert if Seifert was Jewish.

In response to this story, and a warning by Seifert that Cohen could be targeted because Cohen is

also Jewish, Cohen allegedly stated "I don't surround myself with fellow Jews" and "I will not

be a target." Seifert also alleges that during Ellin's investigation of the complaints against

Seifert, Ellin refused to allow Seifert to recite Seifert's joke about Lorena Bobbit and told Seifert

that Dominick's needed to "expedite" the investigation.

We find that Seifert has failed to establish his claim of religious discrimination under the

direct method of proof. First, the pharmacy technician who allegedly questioned Seifert about

his religion was not a Dominick's decisionmaker and her question about Seifert's religion was

not in reference to his suspension or termination. Thus, that question is not proper for

consideration as direct evidence of discrimination. *See Hemsworth*, 476 F.3d at 491. Further,

Cohen's alleged statements that he does not surround himself with fellow Jews and that he will

not be a target do not suggest that Seifert was fired because of his religion and related merely to Cohen's own circumstances.  Lastly, Seifert has provided nothing more than mere speculation that Ellin's alleged refusal to allow Seifert to repeat the Lorena Bobbit joke, and Ellin's alleged statement that Dominick's needed to "expedite" the investigation, was motivated by Seifert's religion.  However, mere speculation is insufficient to create a reasonable inference that Seifert was fired because of his religion.  *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997) ("Speculation does not meet a party's burden in defending a summary judgment motion.").  Therefore, Seifert has failed to establish his religious discrimination claim, as well as his claims of sex and age discrimination, under the direct method of proof.

> 2.      The Indirect Method of Proof

Because Seifert cannot establish any of his discrimination claims under the direct method, he must try to establish those claims under the indirect method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* indirect method, the plaintiff must first establish a *prima facie* case of discrimination.  *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000).  Once that is established, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the action.  *Id.*  If defendant meets that burden, then the burden shifts back to the plaintiff to establish that the employer's proferred reason was a mere pretext for discrimination.  *Id.*

Here, Seifert cannot meet his initial burden of establishing a *prima facie* case for any of his discrimination claims.  To establish a *prima facie* case of any of his discrimination claims, Seifert must prove that (1) he was a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered a materially adverse employment action; and (4) other similarly situated employees who were not members of Seifert's protected class were

7

treated more favorably.  *Kampmier,* 472 F.3d at 939; *Raymond v. Ameritech Corp.*, 442 F.3d

600, 610 (7th Cir. 2006) (standards are the same under Title VII and the Age Discrimination in

Employment Act).  It is undisputed that Seifert is a member of a protected class and that he

suffered an adverse employment action.  However, Seifert cannot prove that he was meeting

Dominick's legitimate expectations at the time he was fired or that other similarly situated

employees who were not members of Seifert's class were treated more favorably.

      "It is axiomatic that an employer may legitimately expect an employee to act

professionally, with integrity."  *Patterson v. Sprint/United Mgmt. Co.*, No. 00-5031, 2002 U.S.

Dist. LEXIS 4811, at \*8 (N.D. Ill. March 22, 2002).  "Part of an employer's legitimate

expectations is also for its employees to adhere to the published employee guidelines and

regulations."  *Id.*  Here, Dominick's sexual harassment policy explicitly prohibits inappropriate

sexual harassment or conduct.  The policy further provides that any employee found to have

engaged in sexual harassment or inappropriate conduct of a sexual nature will be subject to

disciplinary action, up to and including suspension and termination.  Seifert admits telling a joke

to two female co-workers on March 19, 2003 which referenced Lorena Bobbitt, who Seifert

knew was famous for amputating her husband's penis.  It is also undisputed that, following his

March 31, 2003 written warning for telling that joke, Seifert was aware of Dominick's sexual

harassment policy.  Nevertheless, on May 16, 2003, Seifert referenced masturbation during a

conversation with two female co-workers.  Following an investigation, Dominick's concluded

that Seifert had again violated Dominick's sexual harassment policy.  Dominick's fired Seifert

because of Dominick's conclusion that Seifert had twice violated that sexual harassment policy.

The law is well settled that courts do not sit as super personnel departments, second-guessing an

employer's facially legitimate business decisions.  *See Brummett v. Sinclair Broad. Group, Inc.*,

414 F.3d 686, 693 (7th Cir. 2005).  Under these circumstances, it cannot be said that Seifert was meeting Dominick's legitimate expectations at the time he was fired.

Further, Seifert cannot prove that similarly situated employees outside of Seifert's protected class were treated more favorably.  "A similarly situated employee for purposes of proving discrimination refers to employees who were directly comparable to [the plaintiff] in all material respects."  *Id.*  When comparing two employees, we consider all relevant factors, including "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered the latter factors in making the personnel decision."  *Id.* at 692-93.

Here, Seifert cannot meet this standard.  First, Seifert has not identified any similarly situated female who engaged in similar conduct and was treated more favorably.  Thus, his sex discrimination claim fails.  Second, Seifert's reliance on Mensik as a comparator also fails.  Seifert alleges that Mensik had a glass vial with a small wooden milking stool in it and that the vial was labeled "stool sample."  Seifert alleges that Mensik showed the vial to other Dominick's employees as a joke.  However, unlike Seifert, there is no evidence that anyone ever complained about Mensik to Dominick's.  Further, unlike's Seifert's comments, Mensik's alleged "stool sample" joke was not of a sexual nature and thus there is no evidence that it violated Dominick's sexual harassment policy.  Thus, Seifert and Mensik were not similarly situated and Seifert has not offered any other comparators to satisfy his *prima facie* burden.  Therefore, Seifert cannot establish a *prima facie* case for any of his discrimination claims.  Accordingly, Dominick's motion for summary judgment is granted with respect to all claims.

**CONCLUSION**

For the foregoing reasons, defendant Dominick's motion for summary judgment [39] is granted with respect to all counts of Seifert's complaint. This case is terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: _ March 17, 2008_____